AUSA:    Jeanne Brunson         Telephone: (313) 226-9597
AO 91 (Rev. 11/11) Criminal Complaint      Special Agent:    Christopher S. Pennisi, FBI    Telephone: (313) 212-6434

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
   v.
D-1 KYRELL ALLEN
D-2 ANTHONY HOPKINS

Case No.  Case: 2:22−mj−30408
Assigned To : Unassigned
Assign. Date : 9/22/2022
CMP USA V ALLEN ET AL (LH)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  September 18, 2022  in the county of  Wayne  in the  Eastern  District of  Michigan , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2119 | Carjacking |
| 18 U.S.C. § 924(c)(1)(A) | Using and brandishing a firearm during and in relation to a crime of violence (carjacking) |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Christopher S. Pennisi, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: September 22, 2022

_____
Judge's signature

City and state:  Detroit, MI

Hon. Anthony P. Patti, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Christopher S. Pennisi, being duly sworn, depose and state as follows:

## I. INTRODUCTION

1. I am employed as a Special Agent of the Federal Bureau of Investigation for seventeen years, and currently assigned to the Violent Crime Squad in the Detroit Division of the FBI.

2. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2501(7), that is, an officer of the United States who is empowered by the law to conduct investigations of and to make arrests for the offenses enumerated in 18 U.S.C. § 2516.

3. I have investigated federal violations concerning crimes of violence and firearms. I have gained experience through training and everyday work related to these types of investigations.

4. The statements contained in this Affidavit are based on my experience and background as a special agent and on information provided by police officers, other agents of the FBI, and other law enforcement personnel.  The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all of facts known to law enforcement related to this investigation.

5.     This affidavit is made in support of a criminal complaint charging KYRELL ALLEN and ANTHONY HOPKINS with taking a motor vehicle transported, shipped, or received in interstate commerce from the person or presence of another by force and violence or by intimidation and with intent to cause death or serious bodily harm in violation of 18 U.S.C. § 2119.

6.     This affidavit is also made in support of a criminal complaint charging ALLEN and HOPKINS with using and brandishing a firearm during and in relation to a crime of violence (carjacking) in violation of 18 U.S.C. § 924(c)(1)(A).

## II.     SUMMARY OF THE INVESTIGATION

7.     On September 18, 2022 at approximately 7:50 pm, victims LM and EM were playing basketball with juvenile victim JV-1 at the northwest corner of Mack and the Chrysler.  LM had been driving his father's car that day, a Ford F-150 with VIN number 1FTEW1EPXMKE80915.

8.     While they were playing basketball, an unknown juvenile took EM's wallet, which had been placed on the side of the basketball court by EM.  In response, EM chased after a group of juveniles and caught up with two of them on the south side of Mack Avenue.  LM and JV-1 got into the F-150 and LM drove it to the south side of Mack Avenue to pick up EM.

2

9. EM and one of the juveniles got into the truck in order to find the person who took EM's wallet. At the juvenile's direction, LM pulled the truck into the Brewster apartment complex on the southwest corner of Mack and the Chrysler service drive. The juvenile called the individual who stole the wallet.

10. The juvenile that stole the wallet approached the truck and returned $30 in cash to EM that he had taken from EM's wallet. The thief explained to EM that he no longer had the wallet because he had thrown it after taking it. EM asked the thief to show him where the wallet was and he agreed. The thief and EM walked to the back of the apartment building while LM parked so he could watch them.

11. While they were behind the apartment building, EM was approached by several people with firearms who were angry over their perception that EM and JV-1 had "kidnapped" the juvenile who stole EM's wallet. One of the members of the crowd demanded that EM give them everything he had, so he handed over the $30 that had just been returned to him. The group laughed at him and returned the money.

12. EM began to walk back to the truck and the group followed him. A second group of individuals surrounded the truck by the time EM got to it. EM got into the F-150 and he told LM to drive, but an armed individual, later identified as HOPKINS, was at the driver's door of the truck with a gun pointed at LM.

Another male, later identified as ALLEN, stood by the passenger side with a pistol pointed at EM.

13.     HOPKINS ordered LM out of the car several times.  When LM attempted to drive off, HOPKINS told him not to reach for anything, then put the barrel of his gun against LM's thigh and pulled on his clothing to remove him from the driver's seat.  HOPKINS then took the car keys from LM and told everyone to get out of the car and walk away.  HOPKINS announced that if JV-1 moved, he should be shot in the back.

14.     LM, EM and JV-1 all exited the car as directed and walked away. HOPKINS then drove off in the F-150. ALLEN left the scene in a separate vehicle after HOPKINS drove away in the F-150.

15.     On September 18, 2022, members of Commercial Auto Theft Section (CATS) discovered that the stolen F-150 had tracking capability and it was located electronically in the area of 98xx Linwood.  Officers went to that location and discovered the vehicle parked in the rear of 14xxx Lesure Street. Surveillance was set up and a male was observed leaving 14xxx Lesure and enter a blue Chevy Trailblazer with Michigan plate EHJ9xxx.

16.     Surveillance was established on the Chevy and it was followed back to the same apartment complex (Brewster) where it was stolen. Visual contact with it was then lost.

4

17. On September 19, 2022 members of CATS discovered the F-150 in the area of Wisconsin and McKenzie and began following it to the area of Livernois Avenue and Burlingame Street.

18. Eventually the truck was observed pulling into the entrance of the Riverfront Towers located in Detroit. A Michigan State Police Trooper attempted to conduct a traffic stop on the F-150 at the Riverfront Towers but the truck fled at a high rate of speed, driving over the median. The trooper followed the vehicle eastbound on Jefferson Avenue before discontinuing chase in the area of Jefferson and I-375.

19. Shortly thereafter, troopers in a Michigan State Police helicopter advised the Detroit Police that the Ford had crashed on I-375 between Jefferson and Larned and two subjects were fleeing the location. The trooper in the helicopter described the fleeing suspects as a black male wearing green shorts and a white shirt; and a black male wearing black pants and a grey shirt. He further stated that the suspects were climbing the embankment of the expressway heading east at Larned.

20. Several Detroit Police officers drove to the area and observed individuals running who matched the descriptions provided by the officers in the helicopter. Both suspects were arrested in the area of 1300 Lafayette and

5

identified as ANTHONY HOPKINS wearing a white shirt and green shorts, and KYRELL ALLEN, who was wearing a grey shirt and black pants.

21. A search of the area HOPKINS and ALLEN had run through was conducted and a Glock 30 model handgun was recovered near the intersection of Larned and Chrysler service drive.

22. While at the location, a citizen informed officers that two men had ran, one had dropped a gun and the other left a black and orange book-bag on the fence at Chrysler and Larned.

23. A Detroit police detective located the bag and discovered a Glock model 19 handgun inside of it along with a EM'S identification.

24. In your Affiant's training and experience, it is likely that the bag was the victim's property that one of the carjacker's guns was left in the bag by the carjacker to conceal it from law enforcement. Furthermore, it is also likely that the gun/bag combination was removed from the car after the carjackers fled on foot to prevent discovery by the police who were actively chasing them.

25. Both weapons were loaded with several rounds of ammunition at the time of recovery.

26. The area of the car chase was canvassed for video surveillance cameras. Cameras located at 200 Riverfront drive showed two black males wearing the same clothing that HOPKINS and ALLEN were arrested in, inside the

F-150 when the vehicle attempted to enter the Riverfront apartments immediately prior to the attempted traffic stop by the Michigan State Police. A screen capture from the surveillance video appears below:



27. Immediately following his arrest, ALLEN appeared in a shirt with the same graphics on the front:



28. On September 20, 2022 photographic arrays were shown to each victim individually. The victims were physically separated from one another and not permitted to speak to one another once they had viewed the arrays. Each array contained a total of eight pictures of persons of similar build, hair style, skin complexion, and overall appearance. In one array, one of the pictures was HOPKINS, another contained a picture of ALLEN.

29. All three victims (EM, LM, and JV-1) picked HOPKINS and ALLEN out of the photo arrays they were shown. They each identified HOPKINS as the gunman at the driver's door during the carjacking of the F-150 and ALLEN as another gunman.

30. On September 20, 2022, both HOPKINS and ALLEN were interviewed while in custody and after voluntarily waiving their Miranda rights.

31. Both HOPKINS and ALLEN admitted to being present when LM, EM and JV-1 were confronted over the situation with the juvenile who took EM's wallet.

32. HOPKINS also admitted to leaving the Brewster Homes the night of the carjacking in his girlfriend's (A.E.) Chevrolet Trailblazer.

33. The blue Chevy Trailblazer with Michigan plate EHJ9xxx that Detroit Police Officers observed the male leaving 14xxx Lesure on September 18, 2022 after the stolen F-150 was parked there. The Trailblazer was registered to A.E.

9

34. HOPKINS further admitted to having driven DM's F-150.

35. Finally, HOPKINS admitted to having been contacted via social media by ALLEN on September 19, 2022 for a ride.

36. Review of the VIN number assigned to DM's Ford F-150 indicated that it was made in Kansas. Additionally, DM has driven the car to Ohio and Louisville, Kentucky since acquiring it in 2021. Therefore, the vehicle was "transported in interstate commerce" as recited in 18 U.S.C. § 2119.

### III. CONCLUSION

37. Based on the above information, probable cause exists that ALLEN and HOPKINS, while aiding and abetting one another, took a motor vehicle transported, shipped, or received in interstate commerce from the person or presence of another by force and violence or by intimidation and with intent to cause death or serious bodily harm in violation of 18 U.S.C. § 2119 and brandished a firearm in relation to a crime of violence (carjacking) in violation of 18 U.S.C. § 924(c) and 2.

38. In consideration of the foregoing, I respectfully request that this Court issue a complaint against ALLEN and HOPKINS for violation of 18 U.S.C. §§ 2119 and 924(c)(1)(A).

39. Further in consideration of the foregoing, I respectfully request that this Court issue arrest warrants for ALLEN and HOPKINS for violation of 18 U.S.C. §§ 2119, 924(c)(1)(A), and 2.

Respectfully submitted,

_____
CHRISTOPHER S. PENNISI
Special Agent, FBI

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
HON. ANTHONY P. PATTI
UNITED STATES MAGISTRATE JUDGE

Date: September 22, 2022

11